IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTER FOR DERMATOLOGY AND SKIN CANCER, LTD. and ROBERT V. KOLBUSZ, ) ) ) Plaintiffs, ) ) v. ) ) HUMANA INSURANCE COMPANY and ) HUMANA HEALTH PLAN, INC., ) ) Defendants. ) | 11 C 6837<br><br>Hon. Charles R. Norgle |

**OPINION AND ORDER**

Before the Court is Defendants Humana Insurance Company and Humana Health Plan, Inc.'s (collectively, "Humana") motion to dismiss Plaintiffs Center for Dermatology and Skin Cancer, LTD and Robert V. Kolbusz, M.D.'s (collectively, "Dr. Kolbusz") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Humana's motion is granted in part and denied in part.

**I. INTRODUCTION**

**A. Facts**

The Court takes the following facts from the Complaint. Dr. Kolbusz is a board-certified physician and the Center for Dermatology and Skin Cancer is the professional entity through which he practices medicine. Humana is a Kentucky corporation authorized to write health insurance by the Illinois Department of Financial and Professional Regulation, Division of Insurance. For many years, Dr. Kolbusz served as a Humana contracted provider through a Physician Participation Agreement ("PPA") that

he held directly with Humana. Under the PPA, Dr. Kolbusz was considered to be a Humana network physician and he was listed in various Humana documents as such.

On January 1, 2010, the Integrated Physician Association ("IPA") – a physician hospital organization of which Dr. Kolbusz was a member – entered into a contract with Humana ("IPA-Humana Contract") which superseded the individual contracts Humana held with IPA's members. By virtue of his membership in the IPA, Dr. Kolbusz alleges to have retained his status as a participating physician in the Humana network. The IPA-Humana Contract is not attached to the Complaint or to Humana's motion to dismiss.

According to Dr. Kolbusz, the IPA-Humana Contract established his pay rate and the terms under which he was to provide care. Further, he alleges that it superseded his prior contract with Humana, effectively stripping Humana of the power to terminate him. Under the IPA-Humana Contract, it was IPA's responsibility, not Humana's, to determine which doctors were qualified to provide care to Humana enrollees.

Following the change in contracts, Dr. Kolbusz continued to see Humana patients and continued to receive referrals of Humana enrollees from other physicians, as well as from past and present Humana patients. Then, on July 1, 2010, approximately seven months after the IPA-Humana Contract, Humana informed Dr. Kolbusz that it was terminating him from its network of providers, effective October 1, 2010. According to Dr. Kolbusz, Humana lacked the legal authority to terminate him because the IPA-Humana Contract superseded the PPA.

After terminating Dr. Kolbusz from its network, Humana sent notices to its enrollees informing them that Dr. Kolbusz was no longer in the Humana network and directing them to find another physician through the Humana physician finder plan. Dr. Kolbusz

alleges that, out of fear that their medical bills would not be paid, these notices caused his Humana patients to stop using his services and to stop referring him new patients. By sending these notices, Dr. Kolbusz alleges that Humana tortiously interfered with contractual and prospective economic relationships he claims to have held with his Humana patients, leading to lost revenues in excess of $75,000.

**B. Procedural History**

Dr. Kolbusz filed the complaint in the Circuit Court of Cook County on August 26, 2011. Humana removed the case on the basis of diversity and, on October 19, 2011, filed the instant motion to dismiss. The motion is fully briefed and before the Court.

## II. DISCUSSION

**A. Standard of Decision**

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient facts 'to state a claim for relief that is plausible on its face.'" Justice v. Town of Cicero, 577 F.3d 768, 771 (7th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)). The Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). A complaint must provide the grounds of the claimant's entitlement to relief, contain more than formulaic recitations of the elements of a cause of action, and allege enough to raise a right to relief above the speculative level. See id. at 555; see also Virnich v. Vorwald, No. 10-3271, 2011 WL 6382532, at *4 (7th Cir. Dec. 20, 2011). The Court, sitting in diversity, applies Illinois substantive law. However, it is the federal notice pleading standard, not Illinois's fact pleading requirement, that applies to Plaintiffs' claims. See Hefferman v. Bass, 467 F.3d 596, 599 (7th Cir. 2006) ("The

3

Federal Rules of Civil Procedure apply to all cases filed in federal court, no matter what the basis of subject matter jurisdiction.").

**B. Humana's Motion to Dismiss**

Dr. Kolbusz alleges that Humana tortiously interfered with the contracts and prospective economic relationships he claims to have held with his Humana enrollee patients. Humana moves to dismiss on two grounds – first, that Dr. Kolbusz did not have enforceable contracts with his Humana patients and, second, that Humana was privileged to notify its members of Dr. Kolbusz's termination.

### *1. Tortious Interference with a Contract*

"To establish a tortious interference with a contract claim under Illinois law, a plaintiff has the burden of proving the following elements: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages." Echo, Inc. v. Timberland Machs. & Irr., Inc., 661 F.3d 959, 968 (7th Cir. 2011) (citation omitted); see also HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 676 (Ill. 1989).

At issue here is whether "valid and enforceable contracts" existed between Dr. Kolbusz and his Humana patients. Dr. Kolbusz argues that the physician-patient relationship is "grounded in contract" and "contractual in nature." Pl.'s Resp. to Def.'s Mot. to Dismiss 4-5. This argument misses the mark. Even if Dr. Kolbusz is correct about the contractual nature of the physician-patient relationship, he fails to state a claim

for tortious interference with contract because he does not allege, nor can he, that any such contracts were enforceable in Illinois.

"Unlike the right to receive benefits of a contract, the right to engage in a physician-patient relationship is not absolute but is instead terminable at will." Olaf v. Christie Clinic Ass'n, 558 N.E.2d 610, 613-14 (Ill. App. Ct. 1990) (citing Galinski v. Kessler, 480 N.E.2d 1176, 1182 (Ill. App. Ct. 1985) ("[T]he physician-client relationship [is] . . . terminable at will . . . [the plaintiff doctor] did not have any long-term contractual rights to treat [his former patient].")). Indeed, Dr. Kolbusz concedes it is "axiomatic . . . that the physician-patient relationship is terminable at will." Pl.'s Resp. to Def.'s Mot. to Dismiss 7.

This is dispositive of Dr. Kolbusz's interference with contract claim. "Under Illinois law, '[a] defendant's inducement of the cancellation of an at-will contract constitutes at most interference with a prospective economic advantage, not interference with contractual relations.'" Cody v. Harris, 409 F.3d 853, 859 (7th Cir. 2005) (quoting Prudential Ins. Co. of Am. v. Sipula, 776 F.2d 157, 162 (7th Cir. 1985)). Even if Dr. Kolbusz were to cite to the small minority of Illinois cases allowing claims for interference with an at will contract (which he does not), see, e.g., Kemper v. Worcester, 435 N.E.2d 827, 830 (Ill. App. Ct. 1982), this Court is bound by the Seventh Circuit's determination of Illinois law in Cody. At best, Dr. Kolbusz alleges that Humana induced the cancellation of contracts with his Humana patients that were terminable at will. Because this is not enough to state a claim of tortious interference with contract in Illinois, this claim is dismissed with prejudice.

## 2. Tortious Interference with Prospective Economic Advantage

"To succeed in an action for tortious interference with prospective economic advantage under Illinois law, the plaintiff must prove: (1) the plaintiff's reasonable expectation of a future business relationship; (2) the defendant's knowledge of that expectation; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectations from ripening; and (4) damages." Ali v. Shaw, 481 F.3d 942, 944 (7th Cir. 2007) (citing Fellhauer v. City of Geneva, 568 N.E.2d 870, 877-78 (Ill. 1991)). As stated above, the lack of an enforceable contract does not bar Dr. Kolbusz's interference with prospective economic advantage claim. See Cody, 409 F.3d at 859; see also The Film & Tape Works, Inc. v. Junetwenty Films, Inc., 856 N.E.2d 612, 619 (Ill. App. Ct. 2006) ("A relationship created by a contract that is terminable at will is sufficient to support a claim of interference with prospective economic advantage. . . ."); Olaf, 558 N.E.2d at 614 ("[P]lead[ing] tortious interference with his prospective economic advantage . . . would not have required proof of an enforceable contract between Dr. Olaf and his patients, but only a reasonable expectancy of a future economic advantage from the relationship.").

Humana does not argue that Dr. Kolbusz fails to state an interference with prospective economic advantage claim, but rather contends that its conduct was privileged because it was acting pursuant to its duty, under Illinois law, to provide its enrollees with "at least 60 days notice of . . . termination of a health care provider." 215 ILCS 134/20; see also Ill. Admin. Code title 50, § 5420.50(b).

Courts will recognize a privilege in tortious interference cases where "the defendant was acting to protect an interest which the law deems to be of equal or greater value than

the plaintiff's . . . rights." HPI Health Care Servs., Inc., 545 N.E.2d at 677; see also Fellhauer, 568 N.E.2d at 878. The plaintiff, however, "does not have the burden of pleading the lack of a privilege or the 'lack of justification' for a defendant's conduct." Faith Freight Forwarding Corp. v. Ruiz, No. 95 C 7560, 1997 WL 159207, at *6 (N.D. Ill. Mar. 24, 1997) (quoting Roy v. Coyne, 630 N.E.2d 1024, 1033-34 (Ill. App. Ct. 1994)); see also Zdeb v. Baxter Int'l, Inc., 697 N.E.2d 425, 431 (Ill. App. Ct. 1998) ("Where the conduct of the defendant does not invoke a privilege, the defendant shoulders the burden to plead and prove justification as an affirmative defense."). Rather, the plaintiff "has to plead a 'lack of justification' only if the factual allegations in the complaint either explicitly or implicitly establish the existence of a privilege." Ruiz, 1997 WL 159207, at *6 (citing Roy, 630 N.E.2d at 1033-34); see also Williams v. Shell Oil Co., 18 F.3d 396, 402-03 (7th Cir. 1994). To determine whether a privilege applies, the Court must look to the allegations in the complaint:

> [I]f the complaint may not fairly be said to introduce the existence of a recognized statutory or common law privilege, it is not the duty of the plaintiff to plead and prove lack of justification, but it becomes the defendant's burden to plead and prove the privilege as an affirmative matter, for there may be no way for a plaintiff to know in advance whether the defendant enjoys a privilege or, indeed, whether he will ever claim that he does.

Zdeb, 697 N.E.2d at 432 (quotation omitted); see also Emery v. Ne. Ill. Reg'l Commuter R.R. Corp., No. 02 C 9303, 2003 WL 22176077, at *9 n.9 (N.D. Ill. Sept. 18, 2003).

In the present case, the Complaint alleges that Humana exceeded its contractual authority by sending termination notices to Dr. Kolbusz's Humana patients, thereby diminishing his practice. As in Roy, the instant Complaint "does not assert nor imply that defendants acted pursuant to any privilege while interfering with plaintiffs' business

relationships." Roy, 630 N.E.2d at 1034. Instead, Humana raises privilege for the first time in its motion to dismiss. Olaf, the case on which Humana primarily relies, does not help Humana here because it was decided on summary judgment, not on a motion to dismiss. Given the allegations in the Complaint, the Court finds that it is Humana's burden to plead and prove the privilege as an affirmative matter. Humana's motion to dismiss Dr. Kolbusz's interference with prospective economic advantage claim is therefore denied.

### III. CONCLUSION

For the foregoing reasons, Humana's motion to dismiss is granted with respect to Dr. Kolbusz's tortious interference with contract claim but denied with respect to his tortious interference with prospective economic advantage claim.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: February 8, 2012